No. 6583.

CLEMENT & TREMOULET VS. ACHILLE SIGUR AND MRS. L. J. SIGUR.

Going into the Confederate lines, and remaining there during the late war, by the tutor of a minor, did not forfeit his tutorship.

The consideration of a negotiable note given by the tutor of the minor, as such, on the advice of a family meeting, may be inquired into in the hands of the payee, or of any third person who has taken it after maturity.

The tutor can not revive a debt against a minor which is prescribed.

APPEAL from the Fifth Judicial District Court, parish of Iberville. *Dewing,* J.

*Samuel Matthews* and *E. D. White*, for plaintiffs and appellees. ·

*T. E. Grace* and *Barrow & Pope*, for defendants.

The opinion of the court was delivered by

DeBLANC, J. The appellant, Achille Sigur, was born on the first of October, 1853. When his parents died, he was a child and remained with Mrs. Laurent J. Sigur until he was emancipated, on the sixth of March, 1872. John Adolphe Sigur was appointed as his tutor in the month of December, 1858.

On the fifth of March 1869, by virtue of an order from the probate court of the parish of Iberville, a meeting of the family of Achille Sigur was held before a notary public of said parish, and authorized John Adolphe Sigur, as tutor of said minor, to execute, in the latter's name, and to secure by mortgage on his property, three promissory notes, one in favor of Zalina Halphen, wife of Albert Gaillard, one to Charles Oscar Lauve, and one to Mrs. Laurent J. Sigur; said notes to bear eight per cent interest from date, and not to exceed, in the aggregate and exclusive of interest, the sum of $15,000.

The deliberations of that meeting were approved and homologated by the court on the sixth of March 1869, and, on the thirteenth of March 1869, in accordance with the advice of said meeting and the order of the court, John Adolphe Sigur, as tutor of Achille, subscribed and delivered three notes, one to Mrs. Gaillard for $1122 20, another to Mr. Lauve for $950, and a third to Mrs. Sigur for $7880 53, payable one year after date, at the Bank of America, in the city of New Orleans, with interest as therein stipulated.

The note in favor of Mrs. Sigur is now held by John B. Clement & Antoine C. Tremoulet. They have sued on it and allege that it was transferred to them for a valuable consideration and before maturity.

In his answer to that suit, defendant, after a general denial, admits the genuineness of the signature of John Adolphe Sigur to the note, but avers that he alone is liable for its amount, because:

1. To the knowledge of the payee of said note, and at the date it was

·delivered, he (respondent) had large sums of money in the hands of his tutor:

2. The family meeting which authorized the execution of said note was not composed as the law requires, and his tutor was, therefore, without authority to sign and deliver the same.

3. The proceedings by which he became the purchaser of the property ,mortgaged to secure said note are utterly null and void.

4. The family meeting then convened by his tutor was imposed upon by false representations and fraudulent combinations.

5. At the date of his appointment as respondent's tutor, John Adolphe Sigur was his debtor, and said appointment an absolute nullity.

6. If John Adolphe Sigur ever was his legal tutor, he became *functus officio*, in 1862, by his refusal to take the oath of allegiance to the United States, and by removing to and remaining within the Confederate lines, in disregard of general order No. 41.

7. The claim of Mrs. Laurent J. Sigur, when acknowledged by his tutor, was not due; if due, was barred by the prescription of three, five and ten years.

The first four grounds urged by appellant are untenable. To sustain either of them, we would have to look beyond and reverse decrees of ·court, which have not been appealed from, the parties to which are not .all before us, and which can not be collaterally attacked. 15 An. 27. 23 An. 175. 24 An. 224..

The sixth ground is as untenable as the others. In 1862, Sigur was a member of the Confederate Legislature, and he simply discharged his duty in following that Legislature to Shreveport. If, in so doing, he forfeited his trust, then hundreds of tutors were released during the war, and in hundreds of cases, not they, but their wards would suffer ·from the effects of the alleged forfeiture. Would that be just? Assuredly not. . As did the people he represented, when his cause was lost, Sigur returned to the United States an unrestricted and sincere alle-.giance, and the order relied upon, left unimpaired the rights and liabilities attached to his trust.

In the palmiest days of our jurisprudence, the highest court of the Republic said: "It may not be unworthy of remark that it is very unu-.sual, even in cases of conquest, for the conquerer to do more than displace the sovereign and assume dominion over the country. The actual usage of nations, which has become law, would otherwise be violated; that sense of justice and of right which is acknowledged and felt by the whole civilized world would be outraged, if private rights should be .annulled. 7 Peters p. 87.

What is the doctrine taught by Vattel? "Though one of the parties may have been to blame in breaking the unity of a State, and resisting

the lawful authority, they are not the less divided in fact. Besides, who shall judge them? Who shall pronounce on which side lies the right or the wrong. On earth they have no common superior. They stand, therefore, in precisely the same predicament as two nations who engage in a contest, and, notwithstanding the belligerent occupation of a portion of a State, its municipal or private laws remain unchanged."

The vitality of the decree of a court can be destroyed but by a court, and, as the tutorship springs from the law and a decree, no military order could, can, or ever did vacate a tutorship.

The seventh ground urged by the defense has arrested our attention. The note sued upon was signed by John Adolphe Sigur, as tutor of Achille. In that capacity he has granted the mortgage now sought to be enforced. The emancipated minor has attained the age of majority, and he is before us contending:

1. That the claim of Mrs. Sigur, when acknowledged by his tutor, was not due.

2. That, if due, it was prescribed at the date of the acknowledgment.

What proof have plaintiffs introduced of defendant's indebtedness to Mrs. L. J. Sigur? Henry Tremoulet testified "that the origin of said indebtedness was the expenses incurred for rearing and educating him, for back taxes and costs. From the college bills which he saw, he judges that Achille was indebted to Mrs. Sigur for much more than she claimed. They were both wealthy."

To his declaration no amount is attached, no date fixed. Howsoever respectable the witness, can a court, on that naked declaration, condemn the defendant to pay over $12,000? The minor was wealthy, he was interested in two plantations, entitled to considerable revenues, and, nevertheless, his expenses were not paid and, to-day, threaten to wrest from him the scanty remnants of a large fortune.

On the tenth of June 1866, Mrs. L. J. Sigur wrote from New York, to John Adolphe Sigur, and, in that letter, she states; "Jusqu'à présent je ne t'ai pas présenté le compte de mon fils adoptif, Achille; ma position ayant changé, je suis forcée de le soumettre, afin que comme tuteur tu l'approuves et aie l'obligeance de l'envoyer à Mr. Bernard Turpin. Tu verras, par le compte que je t'envoie, que les premiers années ne sont pas comprises etc."

When was that account sent, when acknowledged by the tutor? We find on the margin of said account, from Mr. Turpin, who, it is probable, knew nothing about it, a declaration in the following words and figures "Certifié correct, Nlle. Orléans, le 14 février 1868." In the petition presented by the tutor to convene a family meeting, for the purpose of authorizing him to furnish a note to Mrs. Sigur, the latter's account is

mentioned as one "*claimed*" by her, and its first acknowledgement is evidenced by the note itself, in 1869.

The balance alleged to be due Mrs. L. J. Sigur, on the sixth of May 1866, was, according to the account filed on the sixteenth of July 1869, $4320 53. From the evidence of Henry Tremoulet, a witness of plaintiff, Achille's indebtedness to Mrs. Sigur was composed of that balance, of sheriff's, clerk's and attorney's fees and of back taxes due on the Richland and Old Hickory places.

There seems to be an error in this statement, as further on he said: "The origin of the note sued on in this case was for the fees of Oscar Lauve as counsel for the minor Achille; as well as he could recollect, a part of those fees was for services rendered to the minor in the proceedings by which the property was sold and the mortgage given to secure the note mentioned in the family meeting."

One reason to believe that this is an error is that Oscar Lauve testified that "the note sued upon in case No. 1610, another and a different suit, was given to him for professional services rendered to the minor Achille Sigur, in the matter of his father's estate, and in conformity with the deliberations of the family meeting held on the fifth of March, 1869." We can not and do not presume that these fees were included in the note furnished to Mrs. Sigur, as, otherwise, they would have been twice charged against the minor. It is probable that Tremoulet's evidence referred to the note furnished to Mr. Lauve and sued upon by Mrs. Gaillard.

From the tenor of Mrs. Sigur's letter, it seems evident that it was only in 1866, after the disasters of the war, that she determined to claim what she spent for Achille Sigur, her adopted son, from 1858 to 1865. That supposition is strengthened by the fact that she, the minor, and his tutor were rich—and that, from the date of his parents' death, until the emancipation of the slaves, the minor could have been amply provided for with his own and his tutor's means. His circumstances at that time, not only did not justify, but precluded the contracting of any debt in his name, for his rearing and education. His revenues should have been applied to that object. Mrs. Sigur's right to charge for that object commenced in 1866, from the date of her letter, not before.

Could Achille Sigur inquire into the consideration of the note signed and delivered by his tutor, and which had passed in the hands of third parties? He certainly could, and for two reasons. 1st: the plaintiffs themselves, in attempting to prove the consideration of the note, had opened the door to the evidence adduced by defendant to repel the presumption of consideration growing out of the execution and delivery of said note by his tutor. 2d: at the maturity of said note, as shown by the protest, it was in the hands of Mrs. Sigur's agent, belonged to her,

and was protested in her name. It was, therefore, transferred after maturity, after it was dishonored, and affected by all the equities between the original parties.

In the petition filed by John A. Sigur, as tutor, on March 3d, 1869, he stated "that the costs incurred for the sale of the two plantations and the taxes thereon due amounted to about $1600; that said taxes and costs were paid by Mrs. L. J. Sigur, and thereby she became the creditor of the minor Achille for $560." These plantations were sold under writs of fieri facias issued out of two judgments against John A. Sigur, executor, and an order from the probate court in the matter of the estate of Theodore Sigur, and there is nothing in the transcript to show the amount of either the taxes or costs. It can hardly be expected that, under such evidence, the appellant can be held liable for an amount of costs-mentioned, but not fixed even in the sheriff's return.

The family meeting—it may be said—has acknowledged Mrs. Sigur's claim. On what evidence? The unsworn allegations of the tutor's petition. Her claim is not supported by her own affidavit or that of her agent, and—though we are convinced that neither of these parties was guilty of the fraud charged against them, we can not—without proof—or in disregard of the only proof we have before us, allow the whole of the claim transferred to plaintiff by Mrs. L. J. Sigur. That a portion of that claim is due, we do not deny, but what is that portion?

Defendant, in addition to the other grounds of defense, has filed, in bar of plaintiff's action, the plea of prescription, and that plea must prevail as to seven of the items in the account or statement of Mrs. L. J. Sigur, filed on the sixteenth of July, 1869. Those items are the following: $1500, $2400, $500, $350, $41 25, $86 10, $40 03. These claims were prescribed at the date of their acknowledgment by the tutor, and he was without authority to renounce an acquired prescription. Rev. C. C. 3462. Old C. 3425.

Howsoever reluctant we feel to reopen and continue a controversy submitted to us, we are—nevertheless—constrained to remand this case, in order to give plaintiffs an opportunity to prove what Mrs. L. J. Sigur has or may have paid for the minor Achille Sigur, from the (6th) sixth of May (1866) eighteen hundred and sixty-six, inclusively, and up to the sixth (6th) of March (1869) and which may have been included in the note furnished to the said Mrs. L. J. Sigur, on the thirteenth of March (1869), eighteen hundred and sixty nine, by John Adolphe Sigur, as tutor of said Achille Sigur.

This decision renders unnecessary an examination of the bills of exception filed by the parties in the district court and not urged by them in this court, or of the objection made by defendant to the filing of the amended answer. In that amendment, the only important ground is the

Clement & Tremoulet vs. Achille Sigur and Mrs. L. J. Sigur.

denial of the minor's indebtedness to Mrs. Sigur, and it was but the re-hearsal of one of the averments of the original answer.

It is, therefore, ordered, adjudged and decreed that, as concerns the appellant, Achille Sigur, the judgment of the lower court be, and it is hereby annulled, avoided and reversed at plaintiffs' costs, and their demand rejected for all the items in Mrs. L. J. Sigur's account, charged before the sixth of May, 1866, and included in the note of the thirteenth of March 1869, sued upon by plaintiffs.

It is further ordered, adjudged and decreed that, in other respects, this case be remanded to the district court to be proceeded with accord--ing to law and this decision, reserving to the parties their rights of action and defense, against each other, from and including the sixth of May 1866.