## McCord, Guardian, *v.* Bright et al.

[No. 6,577. Filed March 11, 1909. Petition for rehearing withdrawn September 30, 1909.]

1. DEEDS.—*From Wife to Husband.*—A deed from a wife directly to her husband is void at law. p. 280.
2. DEEDS.—*Grantees.—Joint Tenants.—Incapacity of One.—Effect. —Wills.*—A deed or devise to two grantees or devisees, as joint tenants, one of whom is incapable of taking, is valid, and vests the entire title in the other. pp. 280, 281.
3. DEEDS.—*Married Woman.*—A married woman, her husband joining, may convey her separate real estate to any person whomsoever. p. 281.
4. DEEDS.—*Wife to Husband and Child.*—A deed from a wife, her husband joining therein, to such husband and their child is not wholly void on the ground of the inability of the wife to make a conveyance directly to her husband. p. 281.
5. DEEDS.— *Consideration.— Relinquishment of Inchoate Right.— Husband and Wife.*—A husband's relinquishment of his inchoate rights in his wife's real estate in consideration of a grant by her to him of a greater part of her real estate does not constitute a valuable consideration for such transfer. p. 282.
6. DEEDS.—*Married Women.—Power.*—A deed executed by a married woman alone is void. p. 283.
7. REFORMATION.— *Mistakes of Fact and Law.— Equity.*— Equity will relieve from a mutual mistake of fact, from a mistake of mixed law and fact, and sometimes from a mistake of law. p. 283.
8. REFORMATION.—*Mistake.—What Is.*—A mistake exists when a person, under some erroneous conviction of fact or law, does, or omits to do some act, but for which conviction, he would not have done or omitted to do. p. 284.
9. CONTRACTS.—*Title.—Mistake.*—Where a person contracts with another for the sale of land, and it happens that by the settled principles of law—of which both are ignorant—that no title exists thereto, equity will relieve. p. 284.
10. TRUSTS.—*Trustees.—Title.—Deeds.*—A deed by a grantor to a person in trust for the use and benefit of another, vests the title immediately in the beneficiary. p. 285.
11. EQUITY.— *Form.— Substance.*— Equity regards the substance and not the form of a transaction. p. 285.
12. DEEDS.—*Wife to Husband.—Trusts.—Avoidance.*—A deed from a wife, her husband joining, to a trustee for the benefit of the husband, may be enforced in equity on behalf of such husband, unless there be incapacity, fraud, or undue influence. p. 285.

13. DEEDS.—*Delivery.*—*Acceptance.*—*Infants.*—The signing and unconditional delivery of a deed to the grantee, or to a third person for him, import an acceptance; and, in case of an infant, the recording of a deed imports an acceptance, where such deed is beneficial to such infant. p. 285.

14. DEEDS.—*Beneficial.*—*Infants.*—A deed from a wife to her husband and child, as joint tenants, providing for the vesting of the entire estate in the survivor, is legally beneficial to such child, since the wife had the right to convey or devise such land to others. p. 285.

15. APPEAL.— *Questions Presented.*— *Complaint.*—*Cross-Complaint.* —*Quieting Title.*—*Trusts.*—Where a wife conveyed an undivided half of her land to each her husband and her daughter, and the daughter brought suit to quiet her title to the whole thereof on the ground that such husband had no capacity to take from his wife, and such husband filed a cross-complaint praying for the declaration of a trust, in his favor, in one-half of such land, an appeal by such daughter—the decree being in favor of such husband—brings the whole transaction before the Appellate Court for review. p. 286.

16. DESCENT AND DISTRIBUTION.—*To Husband from Wife.*—*Decedents' Estates.*—A husband has an inchoate interest to an undivided one-third of his wife's real estate, and such wife cannot deprive him thereof except by his consent. p. 287.

17. PARENT AND CHILD.—*Duties.*—*Guardian and Ward.*—A father is the natural guardian of his child, and it is his duty to protect such child's interests. p. 287.

18. DEEDS.—*Fiduciaries.*—*Duties.*—Burden of Proof.—*Parent and Child.*—*Fraud.*—Whenever a fiduciary relationship exists between the parties to a transaction, whether such relationship be legal, moral, social, domestic, or personal, and the superior secures an advantage, at the expense of the other, the burden of proof is upon such superior to show that the transaction was fair and just, and that good faith was exercised, fraud being presumed in such case. p. 287.

19. DEEDS.—*Husband and Wife.*—*Fiduciaries.*—The relationship of husband and wife is a fiduciary one, and a deed from the wife to the husband which is advantageous to him subjects him to the burden of proving its fairness. p. 289.

20. TRIAL.—*Special Findings.*—*Deeds.*—*Wife to Husband.*—*Child.* —Under a cross-complaint by a husband to have a trust declared in his favor for one-half of his wife's real estate, which she conveyed to him, it is necessary that the special findings affirmatively state the facts showing that the transaction was fair and made in good faith. p. 289.

21. APPEAL.— *Questions Presentable.— Disability of Parties.— Infants.—Equity.—Waiver.—Estoppel.—Guardian.—*In a suit, where the interests of an infant are involved, the Appellate Court will consider the merits of the case, though such questions have not been properly presented on appeal, nor in the trial court, an infant being unable to choose a theory, or to select a representative, or to waive a right, or to estop itself, its guardian being unable to do such things to the infant's detriment. p. 290.

22. TRIAL.—*Special Findings.—Omission of Fact.—*The omission of a fact from the special findings constitutes a finding against the party having the burden of proving such fact. p. 291.

23. APPEAL.—*Special Findings.—When New Trial Ordered.—*Although the special findings omit a fact necessary to appellee's recovery, a new trial may be ordered where the justice of the case requires it. p. 291.

From Warren Circuit Court; *Joseph M. Rabb,* Judge.

Suit by John G. McCord, as guardian of Fannie Agnes Bright, an infant, against Oakley Bright and others. From a decree for defendants, plaintiff appeals. *Reversed.*

*Edwin F. McCabe, James McCabe,* and *Hanly, McAdams & Artman,* for appellant.

*Fraser & Isham* and *Addison C. Harris,* for appellees.

HADLEY, J.—Appellant instituted this suit against appellees to quiet title to 400 acres of land in Warren county, averring that his ward was the owner of said lands. To this complaint, appellee Oakley Bright filed an answer and a cross-complaint, to which cross-complaint Fannie Agnes Bright was made a party and was duly served. Her minority being suggested to the court, a guardian *ad litem* was appointed who appeared for her, and filed an answer in general denial. By his cross-complaint said appellee asserted title to the undivided one-half of said lands by virtue of the deed executed by him and his wife, Nancy Luella Bright, who was the mother of Fannie Agnes Bright.

The substantial averments of the cross-complaint are set out in the special findings of the court made at the request of the parties, and it is unnecessary to set them out here. The special findings show that Oakley Bright and Nancy

Luella Bright were husband and wife, and lived together continuously until her death; that said Nancy Luella Bright acquired by deed of gift from her father the title in fee simple to the lands described in the complaint; that appellant's ward, Fannie Agnes Bright, is the only child of Nancy Luella and Oakley Bright, and, at the time of said findings was seven years old; that shortly before December 23, 1901, said Nancy, in view of her approaching death from consumption, with the full knowledge that she would soon die, and for the purpose of making her said husband and child the equal beneficiaries of her affection and bounty, and to avoid family disputes and litigation, and for the preservation of the property in the family, and being wholly concerned in the welfare of her said husband and child, agreed with said Oakley Bright to convey to him and said Fannie, as joint tenants, an undivided one-half of said real estate to each, with the right of survivorship in each; that as a part of the consideration underlying said bargain, it was agreed by said Nancy and said Oakley that said Oakley would join with her in conveying to said Fannie an undivided one-half of said land, and thereby relinquish his rights as a husband in said one-half of said real estate of his said wife, and that said Oakley should receive no other consideration for the surrender of his rights as such husband in that part of said real estate conveyed to said child than the title to be acquired by him under said contract in the other one-half of said land so conveyed to him, subject to said right of survivorship in said child; that, to carry forward and effectuate said agreement, said Nancy accompanied her said husband to a scrivener, selected by them, who then and there held himself out as a conveyancer, and informed him of all the terms and purposes of said agreement, as aforesaid, and said scrivener was requested by said parties to prepare and make such instruments of conveyance or whatever writing was necessary to carry out and fully effectuate the terms and purposes of said agreement, as aforesaid, and thereby vest in said Fanny and

said Oakley, each, an undivided one-half of said land, subject
to the rights of survivorship; that said scrivener, in response
to such request, prepared a deed beginning as follows:

"This indenture witnesseth that Nancy Luella Bright
(the wife of the grantee herein, Oakley Bright, and the
mother of the grantee, Fannie Agnes Bright) and her
husband, Oakley Bright, of Benton county, in the State
of Indiana, convey and warrant to Oakley Bright and
Fannie Agnes Bright, and to the survivors of them, of
Benton county, in the State of Indiana, for the sum of
$20,000, the following described real estate."

That said scrivener advised said Nancy that said deed would
be good and sufficient to vest a fee-simple title in said real
estate in said Oakley and their said child as joint tenants;
that said deed was duly signed by said Nancy and her said
husband, and duly acknowledged and delivered; that the
sole purpose and intent of said Nancy and said Oakley in
the making, acknowledging and delivering of said instrument
was to convey and warrant to said Oakley and to said Fannie,
each, the interests aforesaid; that, at the time of the execu-
tion of said instrument, said Nancy was of sound mind and
under no undue influence or restraint, but she was wholly
unfamiliar with the facts necessary to constitute a convey-
ance; that she did not know and was not advised that the
intervention of a trustee was necessary, or that any particu-
lar form should be complied with to convey her land to her
said husband and said child; that said husband and said
child did not possess the knowledge necessary to enable them,
with the aid of a scrivener, so to proceed as to avail them-
selves of the conveyance to them of the real estate so agreed
to be conveyed to them by said Nancy; that said instrument
was executed, delivered and received by all the parties there-
to in good faith, in the honest belief then entertained by all
of them that said deed was good and sufficient to effectuate
the purpose to convey and warrant to said Oakley and said
Fannie the interest in said lands according to its purport,
as aforesaid; that at the time said agreement was entered

into and at the time said instrument was executed, said
Nancy was not indebted to any person whomsoever, and by
the execution of said instrument said Nancy had no intent to
defraud any person whomsoever; that after the execution
of said writing on April 8, 1902, said Nancy died intestate,
leaving surviving as her sole heirs at law her said husband
and child; that, after the death of said Nancy, said Fannie
Agnes Bright for herself and appellant McCord, the guar-
dian *ad litem* aforesaid, for her claimed and now claim that
said Fannie is the owner in fee simple of all of said realty,
and they deny that said Oakley acquired the equitable or
legal title to said real estate, and deny that said Fannie holds
the legal title to the undivided one-half of said real estate,
subject to said provision as to survivorship, in trust for ap-
pellee Oakley Bright.

Upon the finding of facts the court stated as a conclusion
of law that Fannie Agnes Bright is seized of the legal title
to said real estate as trustee, and holds said legal title for
the joint benefit and use of herself and said Oakley Bright,
each of whom is the owner in fee simple of an undivided one-
half thereof as joint tenants. To this conclusion exception
was duly taken. There are other conclusions stated but it is
unnecessary to set them out.

The questions involved in this case are dependable upon
the construction of the deed set out in the findings. It is
settled in this State that a deed from a wife directly
1. to her husband is void at law. *Sims* v. *Rickets* (1871),
35 Ind. 181, 9 Am. Rep. 679; *Hileman* v. *Hileman*
(1882), 85 Ind. 1; *Luntz* v. *Greve* (1885), 102 Ind. 173;
*Barnett* v. *Harshbarger* (1886), 105 Ind. 410.

It is also the law that in case a devise or deed to lands is
made to two or more devisees or grantees as joint tenants,
if for any reason any one is incapable of taking, the
2. whole estate goes to the remainder. *Dowset* v. *Sweet*
(1753), Amb. 175; *Humphrey* v. *Tayleur* (1751),
Amb. 136; *Ball* v. *Deas* (1848), 2 Strob. Eq. (S. C.) 24, 49

Am. Dec. 651; *Davies* v. *Kempe* (1676), Carter 2; 17 Am. and Eng. Ency. Law (2d ed.), 667.

Under the statute, a married woman may, her husband joining, convey her real estate to whomsoever she desires. §3952 Burns 1908, §2921 R. S. 1881. Under these

3. rules, then, it would appear that the legal title to the land involved was in Fannie Agnes Bright, and appellant's claim would be well founded, unless some equitable principle attaches that would divest said Fannie of at least some portion of the beneficial interest, or wholly avoid the deed. It is suggested in the brief, as was earnestly

4. insisted in the oral argument, that the deed was void *in toto* and conveyed no title to any one, by reason of the inability of a wife to convey directly to her husband. This contention cannot be sustained on this ground. The deed divested the grantor of title. It was correct in form; it described the interests to be conveyed, and named the grantees, one of whom was capable of taking. The husband of said Nancy Luella Bright joined with her, and the deed was duly signed, acknowledged and delivered. All of the usual essentials of a valid conveyance were present. It has been suggested that if it was valid for anything, it

2. would convey only a one-half interest to Fannie Agnes Bright, and that the other half, on account of the incapacity of Oakley, remained in her, and she died seized of the same. If the conveyance had been to the grantees as tenants in common only, there might be some virtue in this contention; but the conveyance is to them as joint tenants, and such a position is not sustained by the authorities. The rule is well stated by Lord Hardwick in the ancient case of *Humphrey* v. *Tayleur, supra,* where a testatrix had devised the residuum of her estate to two persons as joint tenants, and, subsequently, by a codicil, wholly revoked the same as to one of the devisees. The question arose whether the remaining devisee took the whole, only a moiety, or nothing at all. The chancellor said: "If an estate is limited to two

jointly, the one capable of taking, the other not, he who is capable shall take the whole. * * * Where a joint tenancy to two is created in a devise, and the estate vests by the death of one, the survivor takes by the gift, from the nature of the estate, and after the release or death of one, it is pleadable by the other as a devise to him alone, which could not be unless he took the whole by the bequest. * * * Each is the taker of the whole, but not solely, for the whole is devised to both, and not a moiety to each; and in all grants and devises the law looks principally upon the intent of the grantor and devisor; and if the general intent may be preserved, it will uphold the primary intent, though there be a variance in circumstances." These rules are the same as to grants or devises. *Davies* v. *Kempe, supra; Humphrey* v. *Tayleur, supra.*

Having determined that under the deed, if otherwise valid, the whole legal title to the land in question is in Fannie Agnes Bright, we are brought to the question: What 5. of the beneficial title? It is insisted that since Oakley agreed with his wife to relinquish his inchoate interest in the land of his wife to secure a conveyance to himself of an undivided one-half thereof, this is a valuable consideration for such conveyance. But the rule seems to be that where a wife relinquishes her inchoate interest in the lands of her husband, or *vice versa*, in consideration that a greater interest in the same lands shall be reconveyed to such wife or husband, such relinquishment shall not be considered a valuable consideration for such reconveyance. *Phillips* v. *Kennedy* (1894), 139 Ind. 419.

It is not claimed that Oakley Bright gave any other valuable consideration for the joint one-half interest in the land involved, but, in our view of the matter, this makes little difference in this case, since the trust, if it exists at all, arises from the agreement, the grant and intention of the grantor in making them. Appellant contends that, since the deed was void as to Oakley, there is no basis for equitable inter-

ference, since no equity can spring from a void transaction, and he cites numerous cases to sustain this point. The fault of appellant's position lies in the premise. The transaction is not void, any more than were the wills void in *Humphrey* v. *Tayleur, supra,* and *Dowset* v. *Sweet, supra,* and the deed in *Davies* v. *Kempe, supra.* Cases cited by appellant, wherein the wife had made a deed directly to the husband, or had made a deed to another person, in each case without her husband joining, are not analogous. In these cases the deeds were void *ab initio* for want of power in the wife to execute them, and in such cases the court correctly held there was nothing upon which to base equitable interposition. In the present case the husband joined with the wife in the conveyance, thus fully empowering her to make it, and it fails, if at all, not from lack of power of the grantor to make it, but from the incapacity of one of the grantees to take it, or by his fraud in obtaining it. If the deed is valid and equity does not interfere, Fannie Agnes Bright will hold both the legal and beneficial title to the whole of the land, a state of things contrary to the agreement upon which Oakley Bright relinquished his interest in his wife's land and a posture of affairs never intended by Nancy Luella Bright so long as her husband lived.

It is shown by the findings that Nancy Luella Bright, Oakley Bright and the scrivener fully intended to make a valid conveyance of the land according to the tenor of the deed, and that the Brights were ignorant of the necessary steps to carry out their agreement and intentions, but relied upon the conveyancer to direct them and prepare all the necessary instruments to effectuate their purpose and intention.

It is also clear that the conveyancer undertook, in good faith, to comply with their desires. The mistake then was common to all. It is a rule of law that equity will relieve from a mutual mistake of fact, of mixed law and fact, and sometimes of law. 1 Perry, Trusts (5th ed.), §§168, 184-186;

*Gray* v. *Woods* (1837), 4 Blackf. 432; *King* v. *Doolittle* (1858), 38 Tenn. *77; Bispham, Prin. of Eq. (7th ed.), §§185, 468; *Andrews* v. *Andrews* (1859), 12 Ind. 348; *Parish* v. *Camplin* (1894), 139 Ind. 1; 2 Pomeroy, Eq. Jurisp. (3d ed.), §§845, 846.

"A mistake exists when a person, under some erroneous conviction of law or fact, does, or omits to do, some act which but for the erroneous conviction he would not have done or omitted. It may arise either from unconsciousness, ignorance, forgetfulness, imposition, or misplaced confidence." Bispham, Prin. of Eq. (7th ed.), §185.

In *King* v. *Doolittle, supra,* the court say: "If a contract is entered into in good faith, by which it is mutually understood and intended that, for an adequate consideration, the one party shall part with, and the other acquire, a valid title to property; and it turns out that, at the time of the contract, by the operation of some settled principle of law—of which they were alike ignorant—the supposed title was wholly valueless, or did not exist, in legal contemplation, in such case, the mistake is not a mere mistake of law; it involves in some measure a mistake of fact, as well as of law, as the very idea of title comprehends as well matter of fact, as of law. 1 Story, Eq. Jurisp. (13th ed.), §§122-130. * * * That this is such a mistake as a court of equity will relieve against, can admit of no doubt."

In *Parish* v. *Camplin, supra,* the court say: "There are exceptions to the rule that denies relief in equity from a mistake of law. If this was a mistake of law, a mistake as to the legal effect of the deed, it was such an one as was common to all the parties affected. 'It has been said that whenever a mistake of law is common to all the parties, where they all act under the same misapprehension of the law, and make substantially the same mistake concerning it, this is a sufficient ground, without any other incidents, for the interposition of equity.' 2 Pomeroy, Eq. Jurisp. (2d ed.), §846."

The whole contention of appellant is based upon the absence of the intervention of a nominal trustee, a mere form where the transaction is otherwise fair. In fact, it has been held that such a conveyance to such a trustee immediately vests the title in the beneficiary. *Myers* v. *Jackson* (1893), 135 Ind. 136. Equity regards the substance of a transaction and not the form, where the substantial merits of a transaction bestow rights upon the parties. *Wright* v. *Jones* (1886), 105 Ind. 17.

Had Nancy Luella Bright, her husband joining, conveyed to a trustee, for the purpose of having him convey to Oakley and Fannie Agnes, and he had failed to do so, equity would decree such conveyance made as intended. Had such trustee fulfilled his trust, the conveyance in either case would be unassailable except for incapacity, undue influence, or fraud.

It was suggested in oral argument that the deed was ineffective, because it had not been delivered to and accepted by Fannie Agnes Bright. The court found that the deed was delivered. This carries with it the presumption of acceptance. It is a settled principle of law that the delivery of a deed to a third party, or the recording of the same, with the intention on the part of the grantor to divest control of the same, is such a delivery as to vest the title in the grantee. In the case of infant grantees, this presumption at once arises if the interest conveyed is beneficial. *Bryan* v. *Wash* (1845), 2 Gilman (Ill.) 557; *Tobin* v. *Bass* (1885), 85 Mo. 654, 55 Am. Rep. 392; *Cecil* v. *Beaver* (1869), 28 Iowa 241, 4 Am. Rep. 174; *Stewart* v. *Weed* (1858), 11 Ind. 92; *Vaughan* v. *Godman* (1884), 94 Ind. 191.

But it is said that the estate here conveyed to the infant is not beneficial. Looking at it from the present condition, this may appear to be true; but it must be considered as things were at the time the deed was executed and delivered. Then the grantor was the owner, with full

power of disposition, so far as the infant was concerned. The infant had no interest whatever in the estate, and whether she ever would have depended upon the disposition of the owner. By the deed she became the absolute owner of an undivided one-half as joint tenant, an interest that could not thereafter be divested except in her interest. That such a fixed condition of the estate was beneficial, as compared to a mere right of inheritance that might be divested at any time, needs no argument. Whether the interest she received was the most she ought to or might have received, in the absence of influence or restraint upon her mother, or her lack of knowledge, is another question.

We have discussed and decided the foregoing questions, all upon the theory that the deed was executed in all fairness and without any influence on the part of appellee

15. Oakley Bright, since on another trial, if said appellee successfully rebuts the presumption of fraud raised against him, the foregoing questions will necessarily arise. This brings us to a question that is not presented by either party, and evidently was not presented at the trial in the court below. Oakley Bright by his cross-complaint appeals to a court of equity to protect him from the legal effect of the deed in question. This brings the whole transaction before this court for review, and if it appears that for any reason the transaction, under the facts found, will not successfully bear the close scrutiny that such a court gives to transactions of this character, then said appellee should not maintain his suit.

The finding shows that appellee Oakley Bright is seeking to enforce a deed made to him and his infant daughter by his wife and the mother of such daughter; that it was made by such wife and mother while the parties were all living together in peace and harmony, and when the grantor was afflicted with a fatal malady, and was made in view of her final dissolution and consequent separation from her loved ones. It also appears that the interests sought to be con-

veyed to the husband and daughter were highly to the advantage of the husband and disadvantage of the daughter, when compared with their inheritable rights. Before the deed, Oakley had an inchoate interest in his wife's land to the extent of one-third, that could not be divested by deed or will without his consent. Fannie Agnes had an inheritable interest in the two-thirds of said land that could be wholly divested by deed or will at any time before her mother's death. The deed then was beneficial to the extent that it fixed her interest irrevocably in her, but it gave her less than the law would cast upon her as heir to her mother in the absence of deed or will, and it gave to Oakley more than he would inherit under the law. As between the father and daughter, then, the deed was greatly to the advantage of the father. Moreover, the father is the natural guardian of his infant child, and it was his duty zealously to guard her interests, and to take no advantage of her by reason of his position or influence. Was the advantage here shown gained by any words or acts of representation, misrepresentation or deception of the father, or was it the free and unbiased wish of the mother?

This state of facts brings the case within the rule that, whenever two persons stand in such relationship that, during its continuance, confidence is necessarily reposed by one, and a corresponding influence possessed by the other, and this confidence is abused and influence exerted to obtain an advantage at the expense of another in a less fortunate position, the person availing himself of his position for such purposes will not be permitted to retain an advantage thereby secured. The principle extends to every case in which a fiduciary relation exists, as a fact; confidence being reposed on the one side and accepted on the other. The fiduciary relation, with its corresponding duties, does not need to be a legal one; it may be moral, social, domestic or personal. *Huffman* v. *Huffman* (1905), 35 Ind. App. 643; *M'Cormick* v. *Malin* (1841), 5 Blackf. 509; *French* v.

*Cunningham* (1898), 149 Ind. 632; *Rochester* v. *Levering* (1886), 104 Ind. 562; *Ewing* v. *Wilson* (1892), 132 Ind. 223, 19 L. R. A. 767; *Basye* v. *Basye* (1899), 152 Ind. 172; *Sherrin* v. *Flinn* (1900), 155 Ind. 422; *Darlington's Appeal* (1878), 86 Pa. St. 512, 27 Am. Rep. 726; *Farmer* v. *Farmer* (1884), 39 N. J. Eq. 211; *Shea's Appeal* (1888), 121 Pa. St. 302, 15 Atl. 629, 1 L. R. A. 422; *Shirk* v. *Neible* (1901), 156 Ind. 66, 83 Am. St. 150; *Hensan* v. *Cooksey* (1909), 237 Ill. 620, 86 N. E. 1107; 1 Perry, Trusts (5th ed.), §302; Bispham, Prin. of Eq. (7th ed.), §232. And the burden is upon him who sustains the superior position of establishing that he acted in perfect good faith, and took no advantage of his influence or knowledge, and that his contract is fair, adequate and equitable. *Huffman* v. *Huffman, supra;·Shirk* v. *Neible, supra.* See, also, cases before cited.

In such cases the rule that fraud will not be presumed is reversed. The principle is well stated in *Farmer* v. *Farmer, supra,* as follows: " 'It may be stated as universally true that fraud vitiates all contracts, but as a general thing it is not to be presumed, but must be proved. Whenever, however, the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that either on the one side, from superior knowledge of the matter derived from a fiduciary relation, or from overmastering influence, or, on the other, from weakness, dependence or trust justifiably reposed, unfair advantage in a transaction is rendered probable, then the burden is shifted, the transaction is presumed void, and it is incumbent on the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood.' [*Cowee* v. *Cornell* (1878), 75 N. Y. 91.] " See, also, 1 Perry, Trusts (5th ed.), §§194-204.

That the relation of husband and wife is of a character to bring dealings between them within the rule is beyond argu-

ment. Especially where it is the husband that is seeking the advantage. As was said in *Darlington's Appeal, supra:* "Surely, if anywhere, the rule that he who bargains in a matter of advantage with a person, placing a confidence in him, is bound to show that a reasonable use has been made of that confidence, and that the arrangement is fair and conscientious, should be applied in a case where the wife conveyed her property to her husband."

The restrictions laid upon courts of equity in transactions of this character are even more forcibly declared in the case of *Farmer* v. *Farmer, supra,* in the following language: "The confidence of the marriage relation is so complete, and the trust of the wife in the honor, good faith and love of her husband is generally so perfect, that in all business affairs she depends upon him, and suffers herself to be controlled by his judgment. Unless, therefore, the court, in the language of Lord Eldon, watches transactions between parties thus situated, where fraud may be committed with such facility and its discovery may be so easily baffled, with a jealousy almost invincible, it will oftener lend its assistance to fraud than punish the fraud-doer."

It is therefore necessary for appellee Oakley Bright, in his appeal to a court of equity to enforce a contract obtained in his favor from his wife when she was in a weak and enfeebled condition, when the pall of impending death was upon her spirits, to show all the facts and circumstances of the transaction, and that the contract was wholly her desire, uninfluenced by any word or act of his. Did she advise with any one in whom she had confidence? Did she fully understand the nature and effect of the conveyance she sought to make? Was she informed that the effect of her deed might divert the whole of said land from the line from whence it came, and invest it in total strangers, even though her daughter might die leaving lawful issue? Was the plan of distribution suggested by the wife or hus-

band? Was it fair? The health of the respective beneficiaries might have some influence on this question.

These and many other questions suggest themselves in the consideration of this transaction, and all of which appellee Oakley Bright must answer to the full satisfaction of a court of equity. This he has failed to do, as shown by the findings. It is true that the findings show that the wife acted from no undue restraint in making the conveyance, except as she was constrained by her affection for her husband and child. This falls far short of what is required of said appellee to rebut the presumptions against him. The findings show that the grantor was ignorant of the force and effect of conveyancing, and the means whereby it could be accomplished. In the absence of a finding of facts rebutting the presumption of fraud, as before stated, the finding is insufficient to support the conclusion of law.

If this were a suit between parties, neither of whom was under disabilities, we would not of our own motion raise the question last considered, by reason of the rule that parties in this court are bound by the theory of the case they have chosen for themselves. But here the interest of a ward of the court, a favorite of chancery, is affected. She is incapable of choosing a theory. She is incapable of choosing any representative or waiving any right. She can do no act that would operate as an estoppel. Neither can her guardian do these things for her, to her detriment. *Shamleffer* v. *Council Grove, etc., Mill Co.* (1877), 18 Kan. 24; *Whitehead* v. *Jones* (1876), 56 Ala. 152; *Driver* v. *Evans* (1886), 47 Ark. 297, 1 S. W. 518; *Cochran* v. *McDowell* (1853), 15 Ill. 10; *Bearinger* v. *Pelton* (1889), 78 Mich. 109, 43 N. W. 1042; *Wood* v. *Truax* (1878), 39 Mich. 628; *Clement* v. *Sigur* (1877), 29 La. Ann. 798; *Jones* v. *Massey* (1877), 9 S. C. 376; 15 Am. and Eng. Ency. Law, 71, 72; *Crain* v. *Parker* (1849), 1 Ind. *374; *Hough* v. *Doyle* (1846), 8 Blackf. 300; *Hough* v. *Canby* (1846), 8 Blackf. 301. It therefore becomes the duty of this court to search

the record, without regard to the position assumed by the parties, and determine whether the transaction, under the facts disclosed, should or should not be upheld.

In ordinary cases, it is a rule that where the special findings fail to state a material fact, such failure is held to be a finding against the party having the burden of showing such fact, and the usual mandate of this court is that the cause be reversed, with instructions to the lower court to restate the conclusions of law in accordance with such finding, as construed in the opinion. But here, as we have shown, the fault which causes the reversal was not presented or considered by the lower court. It would therefore be manifestly unjust to close the case without giving the parties an opportunity to be heard on this question. Therefore it is our opinion that justice requires that a new trial should be had.

Judgment reversed, with instructions to grant a new trial, with leave to amend the pleadings.

Watson, C. J., Comstock, P. J., Myers and Roby, JJ., concurring. Rabb, J., not participating.