In the Matter of the ESTATE OF August F. BANKO, Deceased.

**Carol Banko ROGERS, Appellant,**
(Petitioner Below)

v.

**The NATIONAL CITY BANK OF EVANSVILLE, Personal Representative, Appellee.** (Respondent Below)

No. 82S01–9310–CV–1138.

Supreme Court of Indiana.

Oct. 20, 1993.

**477**

James D. Johnson, Mattingly Rudolph Fine & Porter, Evansville, for appellant Carol Banko Rogers.

Gordon D. Wishard, Thomas H. Ristine, Kathleen S. Kiefer, Ice Miller Donadio & Ryan, Indianapolis, for amicus curiae: Indiana Bankers Assn., Inc.

David V. Miller, David E. Gray, Bowers Harrison Kent & Miller, R. Eugene Johnson, Thomas J. Kimpel, Statham, Johnson & McCray, Evansville, for appellee National City Bank of Evansville, Personal Representative.

KRAHULIK, Justice.

National City Bank of Evansville (Respondent–Appellee below) (the "Bank") seeks transfer after the Court of Appeals reversed the probate court's denial of Carol Banko Rogers' (Petitioner–Appellant) ("Rogers") petition to reopen the estate of August Banko. *Matter of Estate of Banko* (1992), Ind.App., 602 N.E.2d 1024.

In its petition to transfer, the Bank raises the following issues:

(1) Whether the Court of Appeals improperly applied the common law presumption of undue influence and invalidity to a joint account with rights of survivorship rather than the statutory presumption of validity under the Non–Probate Transfers Act[1]; and

(2) Whether the Court of Appeals erred by reweighing the evidence presented to the probate court.

### *Facts*

August Banko ("Banko") and his first wife had three children, Shirley Banko Stephan, Carol Banko Rogers, and Elizabeth Banko Gower. After his first wife died, Banko remarried. His second wife also died. In 1973, Banko married Nadine Banko ("Nadine"). Banko remained married to Nadine until his death on April 21, 1990.

On May 3, 1990, Philip Siegel ("Siegel"), the attorney for Banko's estate, filed Banko's will with the probate court and successfully petitioned for the appointment of the Bank as personal representative. The probate court clerk sent notice of administration letters to all interested persons, including Banko's daughter, Carol Banko Rogers.

The Bank, as personal representative, timely filed the inventory of probate assets with the probate court on July 17, 1990. This inventory did not include any joint accounts, although in fact, joint accounts existed between Banko and Nadine. Rogers admits receiving the inventory. On August 23, 1990, the Bank filed a petition to determine inheritance tax, which included a schedule of all property owned by Banko. Although the schedule did not individually list the joint accounts, it did refer to accounts "jointly held with surviving spouse" on the appropriate schedule.

The final accounting and petition to settle the estate was filed by the Bank on October 17, 1990. The probate court clerk sent notice to all interested parties of the hearing on the final accounting and a notice of the hearing and filing was published

1. *Ind.Code Ann.* §§ 32–4–1.5–1 through 32–4– 1.5–15 (West 1979).

in the newspaper. No objections were filed. On December 19, 1990, the probate court approved the final accounting and authorized distribution. At the hearing on Rogers' petition to reopen the estate, Rogers testified that she did not receive the notice or a copy of the final accounting, but rather learned about them from her sister at Nadine's funeral.

Following the approval of the final accounting, Rogers made inquiries about the joint accounts to Siegel, Charles Michaels, the Bank's trust officer handling the Banko estate, the assessor's office, and Marlena Pind, Nadine's daughter. On January 17, 1991, Rogers went to the clerk's office of the probate court and copied the schedule of all property. In the spring of 1991, Rogers attempted to obtain financial information regarding the accounts through the use of subpoenas. However, Rogers made no attempt to intervene in Banko's estate. Banko's estate was closed on August 19, 1991, and the personal representative was discharged.

Meanwhile, Nadine died November 28, 1990, shortly before the final accounting in Banko's estate was approved. Her estate was opened on December 4, 1990. The co-personal representatives of Nadine's estate filed an inventory on December 12, 1990. This inventory included the accounts formerly held jointly by Banko and Nadine.

Rogers filed a claim against Nadine's estate because she believed Nadine's estate contained assets which should have been included in Banko's estate. After a hearing, the claim was dismissed.

Rogers also filed a petition to reopen Banko's estate on December 20, 1991. She asserted that it was in the best interests of the estate that it be reopened because assets owned individually by Banko were transferred into joint accounts with Nadine and were not listed on the schedule of all property. Rogers argued that a serious question remained as to whether these assets were distributed as Banko intended. After a hearing, the probate court denied the petition to reopen the estate. The probate court found that the estate should not be reopened because the evidence did not rebut the presumption that joint accounts are valid in the absence of proof otherwise, and that the relevant statutes were intended to bring finality to estate administration.

Rogers appealed. The Court of Appeals held that the probate court abused its discretion by refusing to reopen the estate. The Court of Appeals determined that the law recognizes a presumption of trust and confidence on one side and a corresponding influence on the other side in the husband-wife relationship. As a result of this relationship, the law presumes that improper influence was exerted and that a transaction between spouses is fraudulent where the spouse occupying the superior position deals with the other in a manner which allows the former to gain a substantial advantage.

In its petition to transfer, the Bank asserts that the Court of Appeals improperly reweighed the probate court's findings rather than determining whether the decision was clearly against the logic and effect of facts and circumstances, and that the Court of Appeals improperly held that the law required a presumption of improper influence and fraud.[2]

### Joint Account Presumptions

The issues in this petition to transfer require us to interpret the Indiana's Non-Probate Transfer Act (the "NPTA") and, in particular, presumptions that arise under it. *Ind.Code* § 32–4–1.5–4(a) states: "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created."

The Bank asserts that this provision creates a statutory presumption that, upon the death of a party to a joint account, the

---

**2.** Although the Bank raises several other issues in its petition, we find it unnecessary to address them because our resolution regarding the is- sues of the standard of review and the presumption arising under the NPTA are dispositive.

funds held in the joint account belong to the surviving party. The Bank argues that to successfully rebut this presumption, *Ind.Code* § 32–4–1.5–4(a) requires clear and convincing evidence of a contrary intent existing at the time the account was created. Accordingly, a party challenging the presumption of survivorship must meet its burden of proof without the aid of a presumption of undue influence. The Bank argues that the Court of Appeals' application of the NPTA frustrates the legislature's clearly-expressed intent and imposes an unreasonable burden upon widowed survivors to prove the intent of the deceased spouse.

In response, Rogers argues that the Court of Appeals paid proper deference to the legislative burden of proof contained in the NPTA and that the Court of Appeals properly recognized the existing presumptions: (1) the presumption of trust and confidence that attaches to the husband and wife relationship and (2) the presumption of undue influence by the spouse in the dominant position. As a result of these presumptions, Rogers asserts, a constructive trust is created to prevent the dominant spouse from benefitting from the proceeds and to preserve the proceeds for the estate of the subordinate spouse. Because the NPTA is in derogation of the common law, it must be strictly construed. Thus, Rogers would have us conclude that the legislature only chose to heighten the burden of proof for someone challenging the right of the survivor to the proceeds of the account, but did not intend to destroy the common law of constructive trust as it applied to joint accounts.

Rogers' argument can be traced to the common law where the courts generally would presume the existence of undue influence in a confidential relationship. As stated by this Court:

> There are certain legal and domestic relations in respect to which the law raises a presumption of trust and confidence on one side and a corresponding influence on the other. The relations of attorney and client, principal and agent, husband and wife, and parent and child belong to this class and there may be others. Where such a relation exists between two persons and the one occupying the superior position has dealt with the other in such a way as to sustain a substantial advantage, the law will presume that improper influence was exerted and that the transaction is fraudulent.

*Westphal v. Heckman* (1916), 185 Ind. 88, 93–4, 113 N.E. 299, 301. *See also Shapiro v. Rubens*, 166 F.2d 659 (7th Cir.1948) (applying Indiana law); *Rochester v. Levering* (1885), 104 Ind. 562, 4 N.E. 203; *Hall v. Indiana Dept. of Rev.* (1976), 170 Ind.App. 77, 351 N.E.2d 35; *Hunter v. Hunter* (1972), 152 Ind.App. 365, 283 N.E.2d 775; *Keys v. McDowell* (1913), 54 Ind.App. 263, 100 N.E. 385; *McCord v. Bright* (1909), 44 Ind.App. 275, 87 N.E. 654; *Huffman v. Huffman* (1905), 35 Ind.App. 643, 73 N.E. 1096.

Particularly in situations where the husband stood to benefit from the transaction, historically the relationship of husband and wife put transactions between them within the presumption of undue influence. *McCord v. Bright*, 44 Ind.App. at 288–89, 87 N.E. at 659. This was because the wife was generally considered dependent on her husband ("the trust of the wife in the honor, good faith and love of her husband is generally so perfect that in all business affairs she depends upon him, and suffers herself to be controlled by his judgment." *Huffman v. Huffman*, 35 Ind.App. at 646, 73 N.E. at 1097.)

The presumption of undue influence allowed the party with the burden of proof, usually the dependent spouse, to make a *prima facie* case. *Keys v. McDowell*, 54 Ind.App. at 269, 100 N.E. at 387. As a result, the burden of going forward shifted to the dominant party to establish that he acted in good faith, that he did not take advantage of his position, and that the transaction was fair and equitable. *Rochester v. Levering*, 104 Ind. at 568, 4 N.E. at 207; *McCord v. Bright*, 44 Ind.App. at 288, 87 N.E. at 659. Even where the presumption of undue influence existed, however, a constructive trust would be imposed only where the facts demonstrated actual or

constructive fraud. *Westphal,* 185 Ind. at 99, 113 N.E. at 301. The evidence to establish the constructive trust had to be so clear and convincing as to lead to but one conclusion. *Shapiro v. Rubens,* 166 F.2d at 666.

In contrast to the common law is the legislatively-enacted NPTA which became effective January 1, 1977. The section in question here, *Ind. Code* § 32-4-1.5-4(a), states that absent "clear and convincing evidence of a different intention at the time the account is created," funds remaining at the death of one party belong to the survivor. The Bank asserts that this statutory provision supersedes the common law and requires that joint accounts presumptively belong to the survivor. Rogers contends that the statute does not change the common law of constructive trust, but rather only heightens the burden of proof for the party challenging the right of the survivor to the proceeds of the joint account.

In developing the NPTA, the Indiana Probate Code Study Commission recognized the "underlying assumption is that most persons who use joint accounts want the survivor or survivors to have all balances remaining at death." Unif. Probate Code § 6-104(a), 8 U.L.A. (1983) (quoted by Indiana Probate Code Study Commission in commentary following *Ind. Code* § 32-4-1.5-4). *See also Matter of Guardianship of Walters* (1986), Ind.App., 460 N.E.2d 1011, 1013; *Rogers v. Rogers* (1982), Ind. App., 437 N.E.2d 92, 96. A party may alter the presumption of survivorship, however, by providing the financial institution with a written order containing an alternate instruction. *Ind. Code* § 32-4-1.5-5.

As stated above, at common law a presumption of undue influence arose upon transactions between parties with certain relationships and, as a result of the presumption, the burden of proof shifted to the spouse who benefitted from the transaction to establish the integrity of the transaction. In contrast, under the NPTA statutory scheme, a presumption arises in favor of the survivor, regardless of the relationship between the decedent and the survivor. This statutory presumption requires that a party challenging the survivor's right to the joint account proceeds establish that the decedent did not intend for the survivor to receive the funds. Consequently, the common law presumption of undue influence contradicts the statutory presumption of survivorship because the presumption of undue influence shifted the burden of proof to the survivor of a joint account and this shift in the burden of proof is not contemplated by the statutory scheme.

■ The legislative enactment of the survivorship presumption by unmistakable implication replaces the common law presumption of undue influence. It follows that the common law presumption of undue influence arising between parties with certain relationships no longer exists under the NPTA. We hold that *Ind. Code* § 32-4-1.5-4(a) creates the presumption that a survivor to a joint account is the intended receiver of the proceeds in the account. In order to defeat this presumption, a party challenging the survivor's right to the proceeds must present clear and convincing evidence that the decedent at the account's creation did not intend the joint tenant to receive the proceeds or that the intent of the decedent changed before death and the decedent by written order informed the financial institution of this change. *Ind. Code* §§ 32-4-1.5-4(a), 32-4-1.5-5. Consequently, the burden of proof remained with Rogers to establish by clear and convincing evidence that Banko did not intend for Nadine to receive the funds held in the joint accounts.

### Standard of Review

■ Having determined that proceeds in a joint account presumptively belong to the survivor, we examine whether Rogers presented "clear and convincing" evidence that Banko did not intend for Nadine to receive the proceeds of the joint account. In doing so, we must keep in mind that Rogers is appealing from a negative judgment and thus the trial court will be affirmed unless all evidence leads to the conclusion that the trial court's findings are clearly erroneous and against the logic and

effect of the facts. *Woodward Ins. v. White* (1982), Ind., 437 N.E.2d 59, 67.

In determining whether the findings of fact are clearly erroneous, an appellate court will not reweigh the evidence or determine the credibility of witnesses, but considers only the evidence that supports the judgment and the reasonable inferences to be drawn from the evidence. *Lawyers Title Ins. Corp. v. Pokraka* (1992), Ind., 595 N.E.2d 244, 247. Only where the record contains no facts or inferences supporting the trial court's findings are the findings clearly erroneous. *Id.* When the record contains uncontradicted evidence which supports the conflicting inferences, the inferences drawn by the trial court will prevail. *Id.*

We have reviewed the relevant portions of the record and conclude that the probate court's decision is not clearly against the logic and effect of the facts before the probate court. Although in some instances the evidence is conflicting or could support differing inferences, it is for the probate court to resolve those conflicts and draw the inferences. We find no error.

### Conclusion

Accordingly, we grant transfer, vacate the opinion of the Court of Appeals, and affirm the probate court's decision denying the reopening of August Banko's estate.

SHEPARD, C.J., and GIVAN, J., concur.

DeBRULER and DICKSON, JJ., concur in result.