Rosella VILLANELLA, Mary M. Lewis, Candace Hyde, Patricia Nico, Lee Boucher, and Ann Hoffman, Appellants–Plaintiffs,

v.

William M. GODBEY, as Executor of the Estate of Geneva J. Boucher, as Beneficiary thereof, and individually, St. Thomas, The Apostle Catholic Church, and Diane M. Godbey, Appellees–Defendants.

No. 30A01–9309–CV–302.

Court of Appeals of Indiana, First District.

April 18, 1994.

Roger L. Burrus, Burrus & Burrus, Zionsville, Donn H. Wray, Stewart & Irwin, Indianapolis, for appellants.

Robert G. Bogigian, Dickmann, Reason & Bogigian, Greenfield, for appellee.

BAKER, Judge.

Today we decide whether IND.CODE 29–1–17–13, which bars all suits against the personal representative of an estate after one year of discharge, applies to actions involving nonprobate assets.

Appellant-plaintiffs Rosella Villanella, Mary Lewis, Candace Hyde, Patricia Nico, Lee Boucher, and Ann Hoffman (the Family) appeal the trial court's grant of summary judgment in favor of appellee-defendant William Godbey, as executor of the estate of Claude Boucher, on its claim that Godbey unlawfully transferred assets from Claude to Geneva. The Family also challenges the trial court's involuntary dismissal of its claim that Geneva Boucher's second will and gifts to Godbey and his wife were not valid due to Godbey's alleged undue influence.[1]

## FACTS

Geneva and Claude Boucher were brother and sister. Neither had ever married or had children. They were the last of eight children and lived together on the family farm near McCordsville, Indiana. Each assumed that the survivor would receive the other's assets upon his or her death.[2] In 1986, Claude was ninety-one-years old and dependent upon seventy-nine-year-old Geneva for his care.

In April 1986, Geneva was diagnosed with colon cancer. On April 22, 1986, she executed a power of attorney naming Godbey, her great-nephew, as her attorney-in-fact. About this same time, Geneva had her attorney, G. Douglass Owens, prepare a will for her naming Godbey executor. In this will Geneva bequeathed $1,000 to her church, and the remainder in trust to Claude. Upon Claude's death, Geneva's remaining assets were to be distributed to her nieces and nephews or to their issue per stirpes in the same manner as under the rules of intestate succession.

On April 24, 1986, Geneva underwent surgery for her cancer. Subsequently, she developed complications and was required to undergo a second surgery. During Geneva's period of convalescence from her surgeries, Godbey managed her financial affairs and provided her a great deal of personal care.

On May 7, 1986, Claude executed a power of attorney appointing Godbey as his attorney-in-fact. That fall Claude became terminally ill. In early October, Owens advised Godbey that because they were not certain whether Claude had a will and because Claude was now unable to execute one that Godbey should use his power of attorney to transfer Claude's assets to Geneva to ensure that she would receive them upon his death as the two had planned.[3] Thereafter, Godbey transferred approximately 37 acres of the family farm and $80,000 from Claude to Geneva. The assets remaining in Claude's estate at his death on November 4, 1986, were distributed in the fall of 1987 to Geneva, the Family, and Godbey according to the rules of intestate succession. On November 5, 1987, Godbey was discharged as the administrator of Claude's estate.

On August 24, 1987, Geneva received $38,806.46 from Claude's estate. That same day Godbey prepared one of Geneva's checks for this same amount payable to himself. Geneva signed the check and Godbey deposited it

---

1. Original defendant St. Thomas, The Apostle Catholic Church, is not a party to this appeal. St. Thomas was paid a $1,000 bequest with the Family's approval and did not participate in the trial, although it was never formally dismissed from the action.

2. Beside each other, Claude and Geneva's heirs at law included the plaintiffs Rosella Villanella (niece), Lee Boucher (nephew), Ann Hoffman (niece), Patricia Nico (niece), Candace Hyde (great niece), Mary Lewis (great niece), and defendant Godbey (great nephew).

3. Under the laws of intestate succession, Geneva would have received only a portion of Claude's estate. The remainder would have been distributed to the surviving children of Claude and Geneva's deceased siblings. However, the Family does not dispute that Claude intended for Geneva to receive all of his assets upon his death.

into his own account. On September 11, 1987, Geneva signed another check which Godbey had prepared for $9,977.76 and made payable to himself. On September 13, 1987, Geneva executed a handwritten note stating that she gave Godbey the August 24 and September 11 checks totalling $48,804.22 with full consent as gifts.

On September 16, 1987, Godbey accompanied Geneva to Owens' office to execute a new will. Geneva was not only competent at this time, but she was in much better condition and had a clearer mind than when she executed her first will.[4] Geneva read the will thoroughly and even pointed out that one of her nieces had married since the last will and that the new will did not reflect her new surname. Upon Owens' request, Geneva explained the contents of the will to him and confirmed that she understood the terms and that this was what she wanted. Geneva then signed the will and it was formally executed. In this will Geneva granted the rest of the family farm to Godbey and the balance of her estate to the Family according to the rules of intestate succession. On August 8, 1988, Geneva signed a bank account withdrawal slip closing an account containing $30,331.41 and transferring the money to Godbey's account.

On January 8, 1990, Dr. Hensley diagnosed Geneva with Alzheimer's disease. Geneva continued to live on the family farm until early 1990 when she moved to a nursing home. Geneva died on January 5, 1991, of Alzheimer's dementia and a recurrence of rectal vaginal fistula.

The Family filed a complaint against Godbey as Geneva's personal representative on June 5, 1991. On October 30, 1992, the Family filed an amended complaint asserting for the first time that Godbey made unlawful transfers as Claude's personal representative. Godbey filed a motion for summary judgment on the Family's claim that he unlawfully transferred Claude's property, which the trial court granted. The remaining issue was tried before the court without a jury. At the close of the Family's case-in-chief, God-

bey filed a motion for involuntary dismissal on the Family's claim that Geneva's second will and gifts to him were invalid due to Godbey's undue influence, which the trial court granted. Pursuant to the Family's request, the trial court later entered specific findings of fact and conclusions of law.

### DISCUSSION AND DECISION

#### I. Claude's Gifts to Geneva

The Family contends that the trial court erred in granting Godbey's motion for summary judgment on its claim that Godbey unlawfully made inter vivos gifts of $80,000 and 37 acres of the family farm to Geneva. More specifically, the Family claims that (1) the power of attorney which Claude executed did not give Godbey the authority to make gifts, and thus, the transfers to Geneva were unlawful and void, (2) as the personal representative of Claude's estate, Godbey is personally liable for failing to recoup the $80,000 and 37 acres for Claude's estate, and (3) I.C. 29–1–13–1 does not bar this claim because Godbey's breach relates to assets which were not included in Claude's estate.

■ Summary judgment is appropriate only when the evidentiary matter designated to the trial court shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Tucher v. Brothers Auto Salvage Yard* (1991), Ind.App., 564 N.E.2d 560, 562, *trans. denied.* In reviewing the propriety of a summary judgment ruling, we apply the same standards as the trial court and review all the evidentiary materials designated to the trial court in the light most favorable to the nonmovant. *Id.*

■ The Family's claim against Godbey as Claude's personal representative is governed by I.C. 29–1–17–13 which provides:

Upon the filing of a supplemental report of distribution together with receipts or other evidence satisfactory to the court that distribution has been made as ordered in the

---

4. Dr. Harry T. Hensley, Geneva's family physician, examined Geneva just one month earlier and indicated that she was doing well. Dr. Hensley did not witness the first signs of Gene-

va's mental confusion until January 8, 1990, at which time he diagnosed her as having Alzheimer's disease.

final decree, the court shall enter an order of discharge. The discharge so obtained shall operate as a release from the duties of personal representative and shall operate as a bar to any suit including suits by persons under disability, against the personal representative and his sureties except suits which are commenced within one (1) year from the date of the discharge and are based solely upon alleged mistake, fraud, or willful misconduct on the part of the personal representative.

I.C. 29–1–17–13 is very broad and clearly mandates that immediately upon discharge, any type of suit against a personal representative by any person is barred unless the suit is brought within one year of his discharge and is based solely upon mistake, fraud, or willful misconduct. Contrary to the Family's assertion, I.C. 29–1–17–13 does not provide an exception for nonprobate assets, and we cannot imply one. In fact, more often than not, an action concerning nonprobate assets will be based upon mistake, fraud, or misconduct, and thus, would be expressly barred if not brought within the one-year time period.

Here, Godbey was discharged as the personal representative of Claude's estate on November 5, 1987. The Family did not file its complaint alleging that Godbey made unlawful transfers as Claude's personal representative until October 30, 1992, almost five years later. The Family's claim was clearly barred by I.C. 29–1–17–13. The trial court correctly granted Godbey's motion for summary judgment on this claim.

### II. Geneva's Will and Gifts

The Family next contends that the trial court erred in dismissing its claim that Godbey unduly influenced Geneva, and thus, the inter vivos gifts to him and Geneva's second will were invalid. The Family claims that it established that Godbey had a confidential relationship with Geneva and that he benefited from the gifts and will changes creating a presumption that Godbey exerted undue influence over Geneva. The Family further claims that Godbey failed to rebut this presumption, and thus, the trial court erred in

granting his motion for involuntary dismissal.[5]

In a will contest based on undue influence, a presumption of undue influence arises and shifts the burden of going forward to the dominant party where the plaintiff establishes that (1) a relationship of confidence and trust existed between the testator and the defendant, and (2) the defendant benefitted from the will. *Matter of Estate of Banko v. National City Bank of Evansville* (1993), Ind., 622 N.E.2d 476, 479–80. The defendant may rebut this presumption by establishing by clear and convincing evidence that he acted in good faith, did not take advantage of his position of trust, and that the transaction was fair and equitable. *Id.* If the defendant successfully rebuts the presumption, the burden shifts back to the plaintiff.

In the present case, the power of attorney in Godbey created a fiduciary relationship between Godbey and Geneva. *See Hunter v. Milhouse* (1973), 159 Ind.App. 105, 305 N.E.2d 448. This fiduciary relationship coupled with the transfer of thousands of dollars in cash and 37 acres of real property for nominal or no consideration gave rise to a presumption of undue influence and fraudulent transfers. Having determined that a presumption of undue influence arose, we must determine whether the trial court's judgment against the Family was contrary to law and whether Godbey's evidence was sufficient to sustain the judgment under the clear and unequivocal proof standard. *See Banko,* at 479–80.

The Family argues that the trial court granted Godbey a judgment on the evidence, and thus, it could consider only the evidence and reasonable inferences most favorable to the Family as the nonmoving party. However, the trial court specifically stated that it was treating Godbey's motion for judgment on the evidence as a motion for involuntary dismissal under Ind.Trial Rule 41. Record at 242. Since this action was tried before the court without a jury, the trial court correctly treated Godbey's motion as a motion for involuntary dismissal. In

---

**5.** The Family brought this claim against Godbey before he was discharged as the personal representative of Geneva's estate; therefore, this claim is not barred by I.C. 29–1–17–13.

ruling on a motion for involuntary dismissal the trial court may weigh the evidence, judge witness credibility, and decide whether the party with the burden of proof has established a right to relief or defense. *See* T.R. 41(B). Thus, the procedural posture of the Family's claim is essentially a challenge to the sufficiency of the evidence supporting the trial court's judgment.

Because the Family requested specific findings of fact and conclusions of law, on review we must determine (1) whether the evidence supports the trial court's findings that Geneva was of sound mind and not under undue influence when she made the transfers, and that Godbey presented clear and convincing evidence that he had acted in good faith, did not take advantage of his relationship of trust, and that the transactions were fair and equitable, and (2) whether these findings support the trial court's involuntary dismissal of the Family's claim. *See Vanderburgh County v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 665, *trans. denied.* We will reverse the trial court's judgment only if it is clearly erroneous, that is, if it is unsupported by the findings of fact and conclusions of law. *Id.* Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Id.* In determining whether the findings or the judgment are clearly erroneous, we will not reweigh the evidence or judge witness credibility, and will consider only the evidence most favorable to the judgment and the reasonable inferences flowing therefrom. *Id.* at 665–66.

Here, Geneva executed and signed a handwritten note stating that she had freely given Godbey over $48,000 as a gift. Geneva personally signed all the bank account withdrawal slips and checks through which she gave Godbey cash. Owens, Geneva's attorney, testified that Geneva voluntarily deeded Godbey 37 acres of the family farm as a gift, and that Godbey did not exert any pressure, coercion, or influence over Geneva during the preparation and execution of her second will. Dr. Hensley testified that he examined Geneva just prior to the execution of her second will under which Godbey acquired the bulk of her estate, and that she was doing well and was not experiencing any confusion. Owens testified that when Geneva executed her second will she was not only competent, but had a clearer mind than when she executed her first will. Owens also testified that Geneva thoroughly read and understood the will, explained its contents to him, and then assured him that this was what she wanted. Godbey not only assisted Geneva with her business affairs, but he also took care of her after her surgeries and during her decline, and thus, she may have wanted to show her appreciation. Godbey presented sufficient evidence from which the trial court could reasonably conclude that he rebutted by clear and convincing evidence the presumption of undue influence, and disproved any allegation of incapacity, fraud, or duress raised by the Family.

Judgment affirmed.

NAJAM and KIRSCH, JJ., concur.