WW EXTENDED CARE, INC.,
Appellant–Plaintiff,

v.

Mary SWINKUNAS, Defendant,

and

John Rushinsky and Maria Rushinsky,
Appellees–Garnishees–Defendants.

No. 02A03–0109–CV–302.

Court of Appeals of Indiana.

March 19, 2002.

Jack E. Roebel, Fort Wayne, Indiana, Attorney for Appellant.

## OPINION

BAKER, Judge.

WW Extended Care, Inc., (Extended Care) appeals the trial court's denial of its motion to correct errors and raises several issues which we consolidate and restate as: 1) whether Judge Levine lacked jurisdiction to rule on Extended Care's verified motion for proceedings supplemental; and 2) whether the trial court properly assigned the burden of proof to Extended Care to show that the appellees-garnishees-defendants, John and Maria Rushinsky (the Rushinskys), breached their fiduciary duty as attorneys-in-fact to defendant Mary Swinkunas.

### FACTS

Extended Care obtained a judgment in Ohio state court against Mary Swinkunas for $35,667.82, an amount that Swinkunas owed in connection with nursing home services provided by Extended Care. On June 8, 1998, the Allen Circuit Court domesticated the judgment. To satisfy its judgment against Swinkunas, on August 5, 1998, Extended Care filed a Verified Motion for Proceedings Supplemental, naming the Rushinskys as garnishees-defendants. John Rushinsky is Swinkunas's son, and he and his wife, Maria, were Swinkunas's attorneys-in-fact for health care powers.

The proceedings supplemental hearing was conducted on March 10, 2000, before Special Judge Pro Tem Kathryn A. Brogan.[1] Following the conclusion of Extend-

---

1. Judge Norman E. Baker was originally appointed to hear the case but recused himself. Judge Paul D. Mathias was then appointed Special Judge, but was unavailable to conduct the hearing on Extended Care's motion for proceedings supplemental. Consequently, Kathryn A. Brogan was appointed as Special Judge Pro Tem to act in his stead. Appellant's App. at 8, 15. Judge Mathias subsequently recused himself from this case on March 29, 2000, when he was appointed as a Judge to this court. Appellant's App. at 8.

ed Care's case-in-chief, Judge Brogan ordered the Rushinskys to file a complete accounting of all Swinkunas's funds and property over which they exercised control as attorneys-in-fact.

Special Judge Levine accepted jurisdiction over this case in May 2000. On June 28, 2000, he ordered the Rushinskys to complete the accounting and ordered Extended Care to pay the associated costs. In response to the trial court's order, Extended Care filed a motion to correct errors on July 7, 2000. Extended Care's motion alleged that Judge Levine lacked jurisdiction to issue the June 28, 2000 order and that he erred in shifting the costs of the accounting from the Rushinskys to itself. On August 28, 2000, Judge Levine granted Extended Care's motion to correct errors to the extent that he amended his June 28, 2000 order to require the Rushinskys to complete the accounting but no longer required Extended Care to bear the associated costs. Judge Levine did not rule on the issue of his jurisdiction.

The Rushinskys filed their "Accounting Report" on October 16, 2000. Shortly thereafter, on November 1, 2000, Extended Care filed a motion for default judgment. In its motion, Extended Care alleged that 1) the Rushinskys had breached their fiduciary duty to Swinkunas because they had not properly accounted for the money they had administered for her, and 2) it had a derivative right, as a creditor of Swinkunas's, to pursue a defalcation judgment in her name. Specifically, Extended Care claimed that the Rushinskys had breached their fiduciary duty to keep complete records of all transactions entered into on Swinkunas's behalf, because they failed to identify the source of certain in-

come and failed to explain the purpose of certain expenditures and cash withdrawals.

Judge Levine conducted a hearing on Extended Care's motion for default judgment on April 23, 2001. He subsequently denied the motion on May 29, 2001.[2] In so doing, Judge Levine found, among other things, that:

> While said accounting reveals a number of checks written for either cash, or "legal advise," [sic] which were for a thousand dollars or more, all of said checks were written prior to the filing of Proceedings Supplementary to Execution in this matter.

> One manner in which Plaintiff would be entitled to moneys written to said Garnishee Defendants prior to judgment and/or prior to the filings of Proceedings Supplementary to Execution would be to deem said payments as fraudulent transfers.

Appellant's App. at 132. He then concluded that Extended Care bore the burden of proving that any transfers of money to the Rushinskys were fraudulent, and that Extended Care had not met its burden of proof.

Extended Care filed a motion to correct errors on June 22, 2001, alleging that Judge Levine had confused its claim. Specifically, Extended Care stated that it had never contended that the payments to the Rushinskys were fraudulent. Rather, its contention was that the Rushinskys had breached their fiduciary obligation to Swinkunas by failing to keep complete records and properly account for the monies they had expended on her behalf.

On August 10, 2001, Judge Levine issued an order modifying his original judg-

---

Judge Stanley A. Levine was then selected as the Special Judge on April 20, 2000, and he accepted jurisdiction over this case on May 8, 2000. Appellant's App. at 7.

**2.** This order was entered nunc pro tunc on August 10, 2001.

ment. In his order, he again found that the checks in question were written prior to the filing of the proceedings supplemental and that the Rushinskys possessed no property of Swinkunas's at the time of the filing. In addition, he found that counsel for Extended Care had never reviewed the cancelled checks and other documents that the Rushinskys filed to support the accounting. He also found that at the default judgment hearing Extended Care had elicited no testimony from the Rushinskys regarding any of the items they filed in the accounting. Thus, he concluded that Extended Care had not met its burden of establishing a breach of fiduciary duty on the part of the Rushinskys. Extended Care now appeals from the denial of its motion to correct errors.

## DISCUSSION AND DECISION
### I. Standard of Review

We note at the outset that the Rushinskys have failed to file an appellees' brief. In such a situation, the reviewing court does not undertake the burden of developing arguments for the appellees. *White v. Porter County Treasurer*, 671 N.E.2d 1196, 1197 (Ind.Ct.App.1996). Applying a less stringent standard of review with respect to showings of reversible error, we may reverse the lower court if the appellant can establish prima facie error. *Id.* When, as here, we are presented with an alleged error of law, our review is de novo. *Halteman Swim Club v. Duguid*, 757 N.E.2d 1017, 1020 (Ind.Ct.App.2001).

### II. Extended Care's Claims

Extended Care first claims that Judge Levine lacked jurisdiction to rule on its verified motion for proceedings supplemental. Specifically, Extended Care asserts that Judge Levine improperly assumed jurisdiction over the evidentiary phase of the proceedings supplemental

rather than permitting Judge Brogan to conclude the evidentiary hearing and rule on the cause as required by Ind.Trial Rule 63. That rule provides in relevant part, that the judge who presides at an evidentiary hearing "shall, if possible, hear motions and make all decisions and rulings required to be made ... relating to the evidence and conduct" of the hearing after it is concluded. T.R. 63.

We note that Extended Care did not raise the issue of Judge Levine's jurisdiction in its June 22, 2001 motion to correct error, which is the subject of this appeal. Appellant's App. at 134–35. Rather, Extended Care raised the issue of Judge Levine's lack of jurisdiction in an earlier motion to correct error it filed on July 7, 2000. Appellant's App. at 71. The July 7, 2000 motion challenged Judge Levine's authority to issue the June 28, 2000 order in which he shifted the costs of the accounting from the Rushinskys to Extended Care. Appellant's App. at 71. Specifically, Extended Care alleged that Judge Levine lacked jurisdiction to issue the June 28, 2000, order according to T.R. 63, and that he erred in requiring Extended Care to pay the accounting costs. Appellant's App. at 71, 74. On August 28, 2000, Judge Levine granted Extended Care's motion to correct error to the extent that he no longer required Extended Care to pay the costs of accounting; however, he did not rule on the jurisdictional issue. Appellant's App. at 80–81.

When a party opts to file a motion to correct error, the notice of appeal must be filed within thirty days from either the date that the trial court rules upon the motion to correct error or the date that the motion is deemed denied. Ind.Trial Rule 53.3(A). A motion to correct error is deemed denied as a matter of law if the trial court fails to rule upon it within thirty days after it was heard or forty-five days

after it was filed. T.R. 53.3(A). The timely filing of a notice of appeal is a jurisdictional prerequisite, and failure to conform within the applicable time limits results in forfeiture of the appeal. *Ostertag v. Ostertag,* 755 N.E.2d 686, 687 (Ind.Ct.App.2001).

■ When Judge Levine failed to rule on the jurisdictional issue within forty-five days after Extended Care filed its July 7, 2000, motion to correct error, that issue was deemed denied. *See* T.R. 53.3(A). Extended Care then had thirty days from August 21, 2000—the date that it was deemed denied—to file a notice of appeal.[3] However, Extended Care failed to file a notice of appeal with respect to the July 7, 2000 motion to correct error. Having failed to file such an appeal, Extended Care has waived that issue for appellate review and may not raise it belatedly in its appeal of Judge Levine's ruling on its June 22, 2001 motion to correct error. *See Ostertag,* 755 N.E.2d at 687; Ind.Appellate Rules 5(A), 2(H) (An appeal may be taken from final appealable orders and judgments, and a judgment is final, among other things, if it is "deemed final by law.").

Extended Care next contends that the trial court improperly assigned it the burden of proving that the Rushinskys breached their fiduciary duty by failing to properly account to Swinkunas for the monies they administered as her attorneys-in-fact. According to Extended Care, such burden is "insurmountable" because the accounting report contains unexplained discrepancies with respect to the source of certain income and the purpose of certain expenditures and cash withdrawals. Appellant's brief at 14–15. Thus, Extended Care urges that the burden should properly be placed on the Rushinskys to explain these discrepancies and to prove that the transactions were legitimate. Extended Care asserts that if the Rushinskys are unable to account for the transactions in question, they are liable to it in garnishment. Appellant's App. at 18.

In addressing Extended Care's claim, we note that the Indiana Power of Attorney Act (the Act) requires an attorney-in-fact to use due care for the benefit of the principal and to act in a fiduciary capacity. *See* Ind.Code §§ 30–5–6–2, 3. The Act also provides that the attorney-in-fact is only liable under the powers granted in I.C. §§ 30–5–5–16 and 17 (the healthcare powers) if the attorney-in-fact acted in bad faith. I.C. § 30–5–9–1. One of the duties of the attorney-in-fact is to "keep complete records of all transactions entered into ... on behalf of the principal." *See* I.C. § 30–5–6–4(a). However, the attorney-in-fact is not required to render a written accounting with respect to those transactions unless ordered to do so by a court or requested to do so by certain statutorily authorized parties. *See* I.C. § 30–5–6–4(a).

---

**3.** We note that when Judge Levine granted Extended Care's motion to correct errors in part on August 28, 2000, he did so after expiration of the time limits prescribed in T.R. 53.3(A). Thus, while he granted the July 20, 2000, motion to the extent that he required the Rushinskys to bear the costs of the accounting, the motion was already deemed denied. However, our supreme court has determined that a grant of a motion to correct error after expiration of the prescribed time limits "is not necessarily a nullity, but rather is voidable and subject to enforcement of the 'deemed denied' provision of Trial Rule 53.3(A) in the event the party opposing the motion to correct error promptly appeals." *Cavinder Elevators, Inc. v. Hall,* 726 N.E.2d 285, 288 (Ind.2000). In this instance, the Rushinskys did not appeal the trial court's ruling, and thus the trial court's judgment granting Extended Care's motion with respect to the issue of who should bear the costs of the accounting stands.

■ Where the exercise of an attorney-in-fact's powers are brought into question, the burden of proof is ordinarily on the party asserting breach of fiduciary duty to establish such breach. *Villanella v. Godbey*, 632 N.E.2d 786, 790 (Ind.Ct. App.1994). However, if the questionable transactions benefited the attorney-in-fact as agent of the principal,[4] Indiana law "imposes a presumption of undue influence and fraudulent transfer. The burden of proof [then] shifts to the agent who must demonstrate by clear and unequivocal evidence that he or she acted in good faith and did not take advantage of [the] trusted relationship." Diane L. Liptack, *Curbing Power–of–Attorney Abuse*, 42 *Res Gestae* 14, 14 (1999) (citing *Villanella*, 632 N.E.2d at 790 (determining that power of attorney in great-nephew created fiduciary relationship between him and his great-aunt, and this relationship coupled with inter vivos transfer of large sums of cash and real property for nominal or no consideration, gave rise to presumption of undue influence and fraudulent transfer)); *see also Dotlich v. Dotlich*, 475 N.E.2d 331, 342 (Ind.Ct.App.1985) (stating that "[o]nce it is established that one with a fiduciary duty has attempted to benefit from a questioned transaction, the law presumes fraud" and the burden of proof then shifts to the fiduciary to overcome the presumption by showing that his actions were honest and in good faith), *trans. denied, but abrogated on other grounds by State Bd. of Tax Comm'rs v. Town of St. John*, 751 N.E.2d 657 (Ind.2001).

■ In this instance, Extended Care does not contend that the transactions the Rushinskys made on Swinkunas's behalf constituted fraudulent transfers[5] and it does not allege that the purported breach of fiduciary duty inured to the Rushinskys' benefit. Rather, Extended Care's claim that the Rushinskys have breached their fiduciary duty to Swinkunas is based solely upon their failure to maintain complete records and "to properly account for the monies in their possession during their tenure as [her] attorney-in-fact." Appellant's brief at 14. Thus, the burden of proving a breach of fiduciary duty based on the accounting claims remains squarely with Extended Care.

To the extent that Extended Care urges that the Rushinskys should be required to explain the alleged discrepancies in their accounting, we note that Extended Care had the opportunity at the default judgment hearing to extensively examine the Rushinskys regarding their administration of Swinkunas's funds. Nevertheless, it appears from the trial court's finding that Extended Care failed to take advantage of that opportunity and "elicited no testimony from the Rushinskys regarding any items filed in the accounting."[6] This court will not compensate Extended Care for its failure to examine the Rushinskys about al-

---

**4.** "A power of attorney creates an agency relationship between the person granting the power of attorney (the principal) and the designated attorney-in-fact (the agent)." *Pollas v. Hardware Wholesalers, Inc.*, 663 N.E.2d 1188, 1190 (Ind.Ct.App.1996).

**5.** Extended Care made clear in its motion to correct errors filed June 22, 2001, that: "[It] has never contended that these payments [by the Rushinskys] constituted fraudulent transfers." Appellant's App. at 134. Extended

Care also reiterates this point in its brief. Appellant's brief at 12 n. 4, 14.

**6.** We note that Extended Care did not provide this court with a transcript of the default judgment hearing. However, Extended Care does not contest Judge Levine's finding that it did not attempt to elicit testimony from the Rushinskys regarding the items filed in the accounting.

leged discrepancies in their accounting by shifting the burden of proof. Moreover, it was within the trial court's discretion to determine from the evidence before it that the accounting report was credible. Thus, we conclude that the trial court properly assigned the burden of proof to Extended Care to show that Rushinskys breached their fiduciary duty as attorneys-in-fact to Swinkunas.[7]

Judgment affirmed.

NAJAM, J., and MATTINGLY–MAY, J., concur.

---

7. Extended Care also asserts that the trial court may have improperly considered cancelled checks and other documents to support the Rushinskys' accounting that were never introduced into evidence. Appellant's App. at 11. However, Extended Care can find nothing in the record establishing that the trial court considered any such additional evidence or even that such evidence even exists. *See* Appellant's brief at 11 n. 3. Thus, we need not address this issue.